## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DESTIN WHITMORE, | : | MOTION TO VACATE |
| Fed. Reg. No. 65804-019, | : | 28 U.S.C. §2255 |
|     Movant, | : | |
| | : | CRIMINAL NO. |
|     v. | : | 1:14-CR-00054-CAP-JKL |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:20-CV-4835-CAP-JKL |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Destin Whitmore has filed a *pro se* motion to vacate pursuant to 28 U.S.C. §2255.  (Doc. 33).  Movant seeks to challenge the constitutionality of his convictions and sentences following his guilty plea in the Northern District of Georgia.  (*Id.*).

## I.  PROCEDURAL AND FACTUAL HISTORY

### A.  Facts

Beginning in 2012, Movant used at least three online identities to force teenage girls and at least one woman to send him sexually explicit images of themselves on Facebook.  *United States v. Whitmore*, 777 F. App'x 480, 481 (11th Cir. 2019); (PSR ¶22).  Several of the girls were former girlfriends of Movant or girls that he had met on the internet and had exposed themselves to him when they were minors.  (*Id.* ¶22).

Specifically, Movant would send the girls photographs of themselves in various states of nudity that he had obtained years earlier, and threated to post the photographs online and/or to disseminate the pictures to the girls' families, friends, and employers if they did not comply with his requests for them to send him more images. *Whitmore*, 777 F. App'x at 480; (PSR ¶22). After one girl relented but later refused to send more images, Movant created a fake Facebook profile in her name and posted her photographs there. *Whitmore*, 777 F. App'x at 481. Movant referred to another girl as a "b****" and threatened to contact her parents and friends directly after she refused to respond to his messages. *Id.* And he forced a woman who had acquiesced to his demands to write "camslut" and "whore" on her chest and to touch her genitals. *Id.*

The investigation began when the parent of one of the victims reported that an unknown male, later identified as Movant, had obtained several nude photos of the sixteen-year old girl via Facebook, sent the nude images to her, and threatened to "make the pictures go viral" if she did not send him more images. (PSR ¶23). Investigators learned that Movant resided in Kennesaw, Georgia, and Cobb County Police Detective Ray Drew prepared a search warrant for the Facebook accounts Movant used to contact the victim, as well as a subpoena for the subscriber information on the Internet Protocol ("IP") addresses associated with the Facebook accounts. (*Id.* ¶¶23, 24). A review of the Facebook account history revealed that

2

Movant, using his real name and the aliases "Ralph Jenkins" and "Lenny Carlington," had contacted numerous other victims and also demanded images and videos from them.  (*Id.* ¶¶22, 25).

After executing a search warrant for his home and seizing several computers, thumb drives, a webcam, and two cellular telephones, investigators were able to identify ten victims of Movant's extortion.  (PSR ¶¶27-44).  Investigators found that there were additional unidentified victims of Movant's extortion attempts, but the IP addresses used by the victims were outdated and the Internet Service Providers were unable to provide any records associated with those accounts.  (*Id.* ¶51).

## B.    <u>Procedural History</u>

On February 19, 2014, a grand jury in the Northern District of Georgia returned a fourteen-count indictment against Movant, charging him with one count of coercion and enticement of C.H., a minor, in violation of 18 U.S.C. §2422(b) (Count One); five counts of extortion against victims C.H., S.W., S.A., L.M., and A.R., in violation of 18 U.S.C. §875(d) (Counts Two, Three, Seven, Eight, and Ten); three counts of distribution of child pornography in violation of 18 U.S.C. §2252(a)(2) and (b) (Counts Four, Six, and Nine); and five counts of possession of

child pornography in violation of 18 U.S.C. §2252(a)(4)(B) (Counts Five, Eleven, Twelve, Thirteen, and Fourteen).[1]  (Doc. 1).

Represented by counsel, on September 24, 2014, Movant entered into a negotiated guilty plea to the five counts of extortion charged in Counts Two, Three, Seven, Eight, and Ten, the three counts of distribution of child pornography charged in Counts Four, Six, and Nine, and the two counts of possession of child pornography charged in Counts Five and Eleven. (Docs. 39, 39-1).  As part of the agreement:  the Government would dismiss the remaining counts of the indictment;[2] the Government would not bring any further criminal charges against Movant relating to the charges to which he was pleading guilty and would not seek a four-level enhancement for sadistic or masochistic conduct; Movant would receive the maximum downward adjustment for acceptance of responsibility; and the Government would not make a recommendation as to a fine.  (Doc. 39-1).

The parties agreed that the following Sentencing Guidelines applied to Movant:  a five-point upward adjustment for engaging in a pattern activity involving sexual exploitation of a minor pursuant to U.S.S.G.  §2G2.2(b)(5); a two-point

---

[1]    The three counts of distribution of child pornography related to victims R.K., A.J., and A.M.   (PSR ¶¶31-35, 40-41).   The charges for possession of child pornography related to victims R.K. and H.S.  (*Id.* ¶¶6, 12).

[2]    Movant understood, however, that the Probation Officer and the Court still could consider the conduct underlying the dismissed counts in determining Movant's relevant conduct.  (Doc. 39-1 at 4).

4

upward adjustment for the use of a computer to possess, receive, or distribute child pornography pursuant to U.S.S.G. §2G2.2(b)(6); a five-point upward adjustment for an offense involving 600 or more images pursuant to U.S.S.G. §2G2.2(b)(7)(D); at least a six-point upward adjustment for an offense involving distribution to a minor to persuade, induce, entice or coerce a minor to engage in illegal activity pursuant to U.S.S.G. §2G2.2(b)(3)(D);[3] and a three-level downward adjustment for acceptance of responsibility.  (Doc. 39-1 at 5-6).

The plea agreement did not place any lower limits on the sentence Movant could request. And finally, the plea agreement contained a waiver of Movant's appellate and collateral rights (hereinafter "appellate waiver" or "appeal waiver"). (*Id.* at 9).

The PSR used the 2014 Guidelines Manual to determine Movant's offense level for each charge.  (PSR ¶53).  Specifically, the PSR recommended a base offense level of 9 pursuant to U.S.S.G. §2B3.3 for each extortion count, the first of which also added a two-level upward adjustment under U.S.S.G. §3A1.1(b)(1) because Movant knew or should have known that the victim was a minor, *i.e.*, a vulnerable victim.  (*Id.* at ¶¶53, 57, 59, 63, 69, 75, 81).  In connection with the

---

[3]    In the plea agreement the Government indicated that it would seek a seven-point increase instead of six, which the PSR originally recommended. (Doc. 39-1 at 6; PSR at 25).  After Movant's counsel objected thereto, however, the probation officer agreed to the lesser six-point increase.  (PSR at 25).

charges of distribution and possession of child pornography, the PSR recommended a base level of 22, a six-level upward adjustment under §2G2.2(b)(3)(D) because the offense involved distribution to a minor that was intended to coerce a minor to engage in prohibited sexual conduct, a two-level upward adjustment because the offense involved the use of a computer, and a five-level adjustment for the offense involving 600 or more images. (*Id.* ¶¶ 88, 89, 90, 91). The adjusted combined offense level was 40, which, when reduced by three levels for Movant's acceptance of responsibility, amounted to a total offense level of 37. (*Id.* ¶¶104, 105, 106). Because Movant's criminal history category was I, Movant's custody guideline range was 210-262 months. *See* (*Id.* at 23); U.S.S.G. Ch. 5, Pt. A, Sentencing Table.

At the sentencing hearing, defense counsel argued that because this case was not a "typical" child pornography case, Movant should be sentenced under the guidelines for extortion – which are much less than for child pornography – and requested that Movant be sentenced to ninety-six months. (Doc. 57 ("Sentencing Tr.") at 5, 57-58). While the PSR attributed 209 videos to Movant, counsel argued that there were questions about the actual number of images. (*Id.* at 7-8). To that end, counsel submitted an exhibit indicating that based on the reports from both the FBI and the Cobb County Police Department the number of images they found – including those contained in the videos – was significantly less than the amount reflected in the PSR. (*Id.*).

6

Also during sentencing counsel made several lengthy arguments about how the Court should apply the Sentencing Guidelines, argued that the Court should consider that at the time of the actual extortion the victims were 16, 17, and 19 years old and not prepubescent – albeit that they were younger when the pictures were taken – submitted to the Court twenty-two letters from Movant's friends and family who wrote on Movant's behalf, and called on five of them to speak at the sentencing hearing.   (Sentencing Tr. at 17-28).   Finally, counsel hired an expert in child pornography who reviewed documents, interviewed Movant, issued a report, and testified, *inter alia*, that her evaluation did not indicate that Movant met the diagnostic criteria for pedophilia, that is, he does not have a "sexual interest preoccupation with prepubescent children" and thus his danger to the community is a low risk.  (*Id.* at 28-30).

Before the Court sentenced Movant, the Court agreed with counsel that it was a difficult case and was not the typical child pornography case.  (Sentencing Tr. at 57-58).   The Court found, however, that in actuality Movant's actions were more akin to a sexual predator, and sentenced Movant to 210 months of imprisonment  – the lowest end of the guideline range – to be followed by a total supervised release term of life.[4]  (*Id.* at 58; Doc. 51).  Movant did not file a direct appeal.

---

[4]      In particular, Movant was sentenced to 210 months for the distribution of child pornography convictions, a concurrent 120 months for the possession of child

7

On March 6, 2016, Movant filed his first *pro se* §2255 motion to vacate his sentence in this Court, in which he claimed, *inter alia*, that plea counsel failed to follow his instruction to file an appeal.[5]  (Doc. 59 at 4, 10; Doc. 59-1 at 5-12).  Given the importance of a defendant's right to appeal, I entered a report and recommendation ("R&R") on March 21, 2017, which recommended that the §2255 motion be granted for the sole purpose of reinstating Movant's appellate rights, and that the remaining claims be dismissed without prejudice for Movant to reassert if necessary after the conclusion of his appeal.  (Doc. 67).  On April 17, 2017, the District Court adopted my R&R, vacated and reinstated Movant's sentence to allow him to file an out-of-time appeal, and dismissed the remaining claims without prejudice.  (Doc. 73).

On May 10, 2017, I appointed appellate counsel for Movant.  (Doc. 86).  In the Eleventh Circuit, however, appellate counsel moved to withdraw based on *Anders v. California*, 386 U.S. 738 (1967), indicating that there existed potentially available issues but recommending that those issues lacked merit.  *See Whitmore*, Appeal No. 17-11753-JJ (11th Cir. 2018) (PACER).  On November 13, 2017, the Eleventh Circuit granted appellate counsel's motion to withdraw and affirmed

---

pornography convictions, and a concurrent twenty-four months for the extortion convictions.  (Doc. 51).

[5]     Movant also raised claims of ineffective assistance of counsel through the plea negotiation process and sentencing.  (Doc. 59 at 11-17).

Movant's convictions and sentences. (Doc. 98). The Eleventh Circuit subsequently granted Movant's motion for a panel rehearing, however, vacated its earlier order granting counsel's motion to withdraw and affirming Movant's convictions and sentences, and directed counsel to brief the issue of whether Movant's 210-month sentence is substantively unreasonable. *Whitmore*, Appeal No. 17-11753-JJ (PACER). After the briefing was completed, the Eleventh Circuit held oral argument on May 14, 2019, and affirmed Movant's convictions and sentences on September 19, 2019. *Whitmore*, 777 F. App'x 480.

Movant submitted this *pro se* §2255 motion on November 24, 2020, and raises six grounds for relief: (1) he received ineffective assistance of plea counsel which resulted in an unknowing, unintelligent, and involuntary plea; (2) plea counsel was ineffective for failing to investigate the validity of the charges and evidence; (3) plea counsel was ineffective during sentencing; (4) ineffective assistance of plea counsel resulted in a disproportionate sentence; (5) Government counsel engaged in outrageous and gross misconduct; and (6) appellate counsel was ineffective for failing to raise all of the foregoing issues in the Eleventh Circuit. (Doc. 105). For the following reasons, I **RECOMMEND** that the §2255 motion be **DENIED**.

## II. APPLICABLE LAW

### A. <u>Standard of Review</u>

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted).  *See generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

**B.**     **Ineffective Assistance of Counsel**

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of ineffectiveness claims on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the

Movant must "'show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial.'" *Harvey v. United States*, 674 F. App'x 865, 868 (11th Cir. 2016) (quoting *Lafler v. Cooper*, 566 U.S. 156 (2012)) (internal quotation marks omitted).  In other words, Movant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").  And "a petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

## III.   ANALYSIS

Although the appellate waiver in the plea agreement precludes both direct and collateral review of Movant's convictions and sentences, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams*, 396 F.3d at 1342 n.2.  Thus, to the degree that Movant argues that his plea was unknowing or involuntary, I must

review that separate claim as well as those ineffective assistance of counsel claims he contends rendered his plea involuntary.

**A.    The Record Demonstrates the Voluntary and Knowing Nature of Movant's Plea.**

First and foremost, while Movant takes issue with the Government's arguments regarding his sworn statements during the plea colloquy, the Government is, in fact, correct.  Indeed, it is well settled that there is a strong presumption that statements made during the plea colloquy are true.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *Belli v. United States*, No. 20-13007, 2021 WL 2644704, at *3 (11th Cir. June 28, 2021) ("Belli acknowledged during his plea colloquy that he had read and understood his plea agreement, and we presume that those statements are true."); *Baker v. United States*, 847 F. App'x 761, 765 (11th Cir. 2021) ("There is a strong presumption that the defendant's sworn statements made during a plea colloquy are true.").  Where, as here, any claim by Movant that his plea was involuntary and/or that he received ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false.  *Patel*, 252 F. App'x at 974-75; *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); *see also Frady*, 456 U.S. at 164, 166 ("Once the defendant's chance to appeal has been

waived or exhausted, however, we are entitled to presume that he stands fairly and finally convicted.").  Movant simply has not met this high burden.

During the plea colloquy, Movant stated under oath that:  he understood the constitutional rights he was waiving by pleading guilty, including the right to appeal and collaterally attack his sentence; he understood the charges against him and the maximum penalties in connection with each charge; he agreed with the Government's description of the terms of the plea agreement; his decision to plead guilty was not the product of threats, force, or promises other than those contained in the agreement; no one advised him not to tell the truth; he had discussed with his attorneys the Sentencing Guidelines and how they might apply to his case; he understood everything the Court had told him and did not need for the Court to clarify anything; he had sufficient time to think about and discuss the matter fully with his attorneys and was satisfied with their representation; and he understood that the Court had authority to impose a sentence more or less severe than the guidelines range.  (Doc. 69 ("Plea Tr.") at 6-30).

The Court emphasized that it might not accept the plea agreement's recommendations, but that Movant would still be bound by his guilty plea, which Movant indicated he also understood.  (Plea Tr. at 28-30).  After the Government recited the factual basis for the plea, Movant agreed with that synopsis, affirmed that he was, in fact, guilty of the offenses to which he was entering his plea, that he knew

what he was doing could result in his arrest, and that he knew he was wrong to do it. (Plea Tr. at 23-24).  Movant also confirmed his understanding that he was waiving his right to appeal or collaterally attack his conviction and sentence except for those circumstances outlined in the plea agreement.  (*Id.* at 28).

Notwithstanding his sworn statements, Movant, through two affidavits [Docs. 109-1, 117-1], now asserts that he only answered the Court's questions the way that he did because his attorney told him he had no other options and instructed him to say "yes" or "no" and talk as little as possible.  (Doc. 109-1 at 3-4; Doc. 117-1 at 2-5).  He also claims that he did what he was told because he had limited knowledge at the time he entered his plea and did not discover all of the "information" until after sentencing.[6]  (Doc. 109-1 at 7, 19; 117-1 at 5-10).  Specifically, Movant

---

[6]      To the degree that Movant attempts to rely on the fact that he was naïve, a "dumb kid," and did not know anything about the law [Doc. 109 at 6; Doc. 117 at 3, 5; Doc. 117-1 at 6], his reliance is misplaced.  At the beginning of the plea colloquy, the following exchange occurred:

| THE COURT: | If you do not understand any of my questions, or if you have trouble hearing me, please stop me and I'll repeat or rephrase the question, because it's essential to a valid plea that you understand each question before you answer.  Can you hear me ok? |
|---|---|
| MOVANT: | Yes, sir. |

(Plea Tr. at 4).  Insofar as Movant now states that he did not know he could speak up during the colloquy, that he was confused, and that his aforementioned response only answered the District Judge's question of whether Movant could hear him okay [Doc. 117 at 3-4], Movant ignores the fact that at the end of the colloquy the Court specifically asked Movant if there was anything he did not understand or which the

indicates that after he was sentenced he discovered the names of two of the victims—

that is, A.J. and A.M.—and knows that they were over eighteen when the events for

which he was convicted occurred. According to Plaintiff, therefore, "it is beyond

reproach that he is innocent of counts 6 and 9 of the indictment." (Doc. 109-1 at 7-

10; Doc. 117 at 16; Doc. 117-1 at 7-8). He also argues that counsel did not

investigate the case; otherwise, counsel would have known of his innocence to those

charges, as well as the fact that the Government was wrong about the amount of

videos.[7] (Doc. 109 at 8-14; Doc. 117 at 14-15; Doc. 17-1 at 8-11). Movant also now

indicates that he entered the plea because counsel assured him that he would only be

sentenced to five to eight years in prison. (Doc. 109-1 at 1; Doc. 117-1 at 1). None

of Movant's post-plea revelations, however, render Movant's plea involuntary.

Indeed, neither Movant's claim that he was told to say "yes" or "no" to the

Court's questions, or his indication that counsel assured him that he would receive

only five to eight years in prison, overcome the strong presumption of the truth of

his statements during the colloquy. *See United States v. Munguia-Ramirez*, 267 F.

App'x 894, 897 (11th Cir. 2008) (holding district court did not err in finding that the

---

Court needed to go back over and clarify, and/or whether Movant needed more time
to discuss the plea with his attorneys. (Doc. 69 at 30). Movant responded, "No, sir."
(*Id.*).

[7]   I will address Movant's argument about the amount of videos in the discussion
of whether counsel provided ineffective assistance.

movant knowingly and voluntarily entered into a guilty plea due to counsel's incorrect estimation of his ultimate sentence, where record indicated that he understood he could not withdraw his plea even if he received a more severe sentence than he thought); *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (finding the petitioner did not overcome the strong presumption of the truth of his statements made at the plea colloquy where after the fact he claimed that counsel had advised him that he would receive a shorter sentence); *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) (holding that "[t]o the extent [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence . . ., the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the court ultimately imposed.").

Insofar as Movant claims that he realized after the plea that he is innocent of Counts Six and Nine – distribution of child pornography based on images of victims A.M. and A.J. – his argument does not pass muster.  He first claims that A.J. was at least nineteen years old in the pictures for which he was charged with distributing. According to Movant, he did not meet A.J. until 2011, and that based on her birth date she was not a minor when they met.  Movant, however, misses the point.  In fact, A.J. told investigators that the nude images in question were those that she had made and transmitted over the internet when she was fifteen years old. (PSR ¶34).

Movant contacted her in 2012, transmitted those images to her, and requested more of the same. (*Id.* ¶35). Even if Movant did not "meet" A.J. until 2011 or 2012 as he alleges, he still transmitted the nude pictures that A.J. made and transmitted when she was fifteen to try to induce her to provide him with more nude images.

With regard to A.M., Movant argues that what he is charged with is "highly suspect" because, he contends, the content in question is from a public live webcam show where A.M. stripped for her viewers when she was eighteen. (Doc. 109 at 11). The content to which Movant refers, however, is not the video footage with which he was charged and convicted. Instead, the content at issue was sexually explicit videos A.M. told investigators she made for Movant in 2009 when she was sixteen years old. (PSR ¶¶40, 41). And then in 2012, Movant represented himself as Ralph Jenkins, contacted A.M., sent her several of those sexually explicit videos from 2009, and told her he was a "very big fan" of her videos. (*Id.* ¶40).

Other than his self-serving statements, Movant has not provided any support for his statements that neither A.J. nor A.M. was a minor when the images were taken, and any such protestations of innocence are insufficient to render Movant's plea involuntary. In short, all of Movant's claims belie his statements under oath, and Movant has not met the high burden to overcome the strong presumption that his statements during the plea colloquy were true. *See United States v. Palacios*, 516 F. App'x 734, 737 (11th Cir. 2013) (finding that the movant did not overcome

the presumption of truth during the plea colloquy where after the fact he claimed that he did not have the requisite knowledge for money laundering, because during the plea colloquy he did not object to the government's proffer and explicitly stated that the conduct and knowledge ascribed to him were accurate); *see also United States v. Hamidullah*, 847 F. App'x 659, 666 (11th Cir. 2021) (finding the court properly denied movant's motion to withdraw his plea because he had failed to rebut the strong presumption of statements made under oath during the plea colloquy, *i.e.,* that he had fully discussed the case with his attorney and was satisfied with her representation), *petition for cert. filed and docketed*, No. 26-5601 (U.S. Sept. 8, 2021).

**B.** **Plea Counsel Did Not Provide Ineffective Assistance.**

    1.    Movant Has not Demonstrated Plea Counsel's Ineffective Assistance for Failing to Advise Movant of Other Types of Pleas.

In Ground One, Movant argues that counsel provided ineffective assistance because he failed to inform Movant about alternative options, such as an *Alford* plea, a "straight up" or *nolo contendre* plea, an open plea with a binding sentence, or proceeding to trial. Here, however, the Government was willing to provide a negotiated plea which, contrary to Movant's opinion, was highly favorable to him compared to the alternatives. And counsel's advice that Movant should take a plea that plainly was in Movant's best interest certainly cannot be considered deficient performance. Put another way, this Court cannot conclude that any such advice was

"so patently unreasonable that no competent attorney would have chosen it." *Goff v. United States*, 693 F. App'x 854, 854 (11th Cir. 2017).

Nor can Movant show a reasonable probability that the result would have been different had counsel advised Movant of the alternative ways to plea, or that counsel's advice would have been any different had he done so. Indeed, Movant has not provided any evidence that any other plea option even would have been available to him, or that the Government would have agreed to, and the Court would have accepted, any such option. Movant's argument of prejudice, therefore, is nothing more than pure speculation, which does not suffice. *See, e.g., Cleckler v. United States*, 410 F. App'x 279, 284 (11th Cir. 2011) (stating that speculation is not sufficient to satisfy defendant's burden to show reasonable probability that the outcome would have been different); *see also United States v. Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987) ("Though a judge may enter judgment upon a guilty plea offered under [*Alford*], he is not required to do so."). And while Movant places much importance on the fact that if he entered an alternative plea he could have argued against the guideline applications to which he agreed, he cannot show that the Court would have accepted any of his arguments or that he would have been sentenced any differently. *Cf. United States v. Green*, 873 F.3d 846, 860 (11th Cir. 2017) ("We have treated nolo convictions the same as other types of convictions for purposes of applying the Sentencing Guidelines.").

Finally, despite Movant's argument that the plea agreement was not at all favorable to him, his argument is simply wrong. To be clear, had Movant not entered a negotiated plea, his sentence could have been much more severe. Without the agreement, there is no guarantee that the Government would have dismissed Counts One, Twelve, Thirteen, and Fourteen. And under those circumstances Movant could have received:

> a mandatory minimum of ten years up to life imprisonment for coercion or enticement of a minor in violation of 18 U.S.C. §2422(b) (Count One);
>
> a maximum of two years or imprisonment for each of the five counts of extortion in violation of 18 U.S.C. §875 (Counts Two, Three, Seven, Eight, and Ten);
>
> a maximum of twenty years of imprisonment for each of the three counts of distribution of child pornography in violation of 18 U.S.C. §2252(a)(2) and (b) (Counts Four, Six, and Nine); and
>
> a maximum of ten years of imprisonment for each of the five counts of possession of child pornography in violation of 18 U.S.C. §2252(a)(4) and (b) (Counts Five, Eleven, Twelve, Thirteen, and Fourteen).

Additionally, had Movant refused to accept the negotiated plea, the Government would not have been bound by its agreement not to seek a four-point upward adjustment for sadistic or masochistic conduct; nor would Movant have received a three-point reduction for accepting responsibility.

With the four-point upward adjustment and without the three-point reduction, Movant's adjusted offense level would have gone from 37 to 44. *See* U.S.S.G. Ch.

5, Pt. A, Sentencing Table.  The Sentencing Guidelines provide that the *bottom* of the sentencing range for an adjusted offense level of 43 or more – even with a Criminal History category of I – is life imprisonment, much more than the 210 months Movant actually received.  *Id.*  Consequently, Movant cannot show any prejudice, *i.e.,* that a decision to reject the plea agreement would have been rational under the circumstances, based on counsel's alleged failure to advise him of alternative options.  *See Harvey v. United States*, 674 F. App'x 865, 869 (11th Cir. 2016) (finding it would not be rational for movant to have rejected the plea where, *inter alia*, the Government agreed to a deal that allowed him to avoid additional charges, to more persuasively argue at sentencing for a variance, and to receive a reduction for acceptance of responsibility); *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (holding movant could not show that a rational person would have rejected the plea bargain when the plea he entered reduced his sentence by eight years); *see also United States v. Saucedo-Avalos*, 753 F. App'x 561, 564 (10th Cir. 2018) (finding movant, who received a three-level downward adjustment for acceptance of responsibility – which reduced the bottom of the guideline range from life imprisonment to 360 months – could not demonstrate how a decision to reject the plea agreement would have been rational); *United States v. Lefever*, 343 F. App'x 595, 597 (11th Cir. 2009) (finding even though the plea agreement was not optimal from defendant's perspective, it was instead an available

deal that he would have much preferred over no deal at all).  Accordingly, Movant
has not demonstrated counsel's ineffective assistance resulted in an involuntary plea,
and he is not entitled relief in connection with Ground One.[8]

> 2.    Movant Cannot Demonstrate Ineffective Assistance for Counsel's
>        Alleged Failure to Investigate.

Movant's claim that plea counsel did not investigate his case also is clearly
belied by the record.  Insofar as Movant claims that had counsel done so he would
have discovered that Movant was actually innocent of the charges involving A.M.
and A.J., as discussed previously in Section III.A., those arguments have no merit.

To the extent that Movant believes that counsel also was ineffective for failing
to investigate the amount of videos and that had he done so he could have argued
that the enhancement for more than 600 images did not apply to Movant, this
argument also lacks merit.  The record is clear that plea counsel did, in fact,
investigate the number of videos and specifically raised arguments based on that
investigation and his findings.

In particular, while the PSR indicated that investigators found 209 videos, plea
counsel objected to that part of the PSR.  (Movant's response to PSR ¶50).
Moreover, because counsel did, in fact, thoroughly investigate the number of videos,

---

[8]    My conclusion that Movant has not demonstrated prejudice applies to, and
defeats, all of Movant's ineffective assistance of counsel claims. *See Strickland*, 466
U.S. at 697; *Atkins*, 965 F. 2d at 959.  Regardless, I will address the remaining claims
in turn.

he argued at sentencing that the amount of videos attributable to Movant equaled twenty-six videos consisting of 1951 images, rather than 209 videos containing 15,675 images the Government attributed to Movant.[9]   (Sentencing Tr. at 7).   On this record, it is difficult to surmise what further investigation Movant believes counsel could have undertaken in connection with the number of videos.   And even after his thorough investigation, counsel could not have argued that the enhancement for more than 600 videos did not apply to Movant, as even the lesser amount counsel found was attributable to Movant still supported that enhancement.

Because Movant has failed to demonstrate that counsel was deficient in this way, he also cannot show that as a result of counsel's actions his plea was involuntary. *See Carter v. United States*, No. 18-12723-B, 2018 WL 8667010, at *1 (11th Cir. Oct. 12, 2018) (finding that the plea colloquy showed defendant's plea was voluntary, and "Carter's testimony at his change-of-plea hearing belied his claims that his counsel failed to investigate his case, did not inform him of the consequences of his guilty plea, and did not negotiate a sufficiently favorable plea agreement.").   And, as discussed in Section III.B.1., Movant cannot demonstrate that it would have been rational to reject the plea, and/or that any such alleged investigation counsel should have conducted would have led counsel to change his

---

[9]      The Sentencing Guidelines provide that every video is considered to contain seventy-five images.  Application Note 4(B)(ii) to U.S.S.G. §2G2.2 (2016).

recommendation that Movant accept the negotiated plea.  *See Lockhart*, 474 U.S. at

59 ("[W]here the alleged error of counsel is a failure to investigate or discover

potentially exculpatory evidence, the determination whether the error 'prejudiced'

the defendant by causing him to plead guilty rather than go to trial will depend on

the likelihood that discovery of the evidence would have led counsel to change his

recommendation as to the plea.  This assessment, in turn, will depend in large part

on a prediction whether the evidence likely would have changed the outcome of a

trial.").  Movant, therefore, is not entitled to relief as to Ground Two.

## C.   **The Appellate Waiver Bars Grounds Three, Four and Five.**

In  Grounds  Three  and  Four,  Movant  argues  that  plea  counsel  provided

ineffective assistance at sentencing, and that counsel's ineffective assistance led to

a disproportionate sentence.  In Ground Five Movant asserts that the Government

engaged in outrageous misconduct.  The Government argues that these claims are

waived.  I agree.

"An appeal waiver is enforceable if the defendant knowingly and voluntarily

entered into it." *United States v. Lawyer*, 771 F. App'x 970, 975 (11th Cir. 2019).  A

waiver  is  found  to  be  knowing  and  voluntary  where,  as  here,  the  district  court

specifically questioned the defendant about the appellate waiver during the plea

colloquy [Plea Tr. at 28] and/or "it is manifestly clear from the record that the

defendant otherwise understood the full significance of the waiver." *Lawyer*, 771 F.

App'x at 975; *see also United States v. Arce*, 718 F. App'x 931, 933-34 (11th Cir. 2018) (stating that an appellate waiver is knowing and voluntary, "particularly where the defendant acknowledges the waiver in a plea agreement, the district court specifically questions the defendant during the plea colloquy about the appeal waiver, and the court adequately explains the significance of the waiver").

Movant's valid and enforceable appellate waiver provides that Movant may not collaterally attack his conviction and sentence – including through a §2255 motion – on any ground.  (Doc. 39-1 at 9).  Because none of these claims relate to the voluntary nature of his plea, Movant has waived Grounds Three, Four and Five. *See, e.g., Griffis v. United States*, 746 F. App'x 880, 882 (11th Cir. 2018) ("We have held that collateral attack waivers preclude §2255 motions premised on claims of ineffective assistance of counsel during sentencing."); *Williams*, 396 F.3d at 1341-42 (stating that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing."); *Hernandez-Rodriguez v. United States*, No. 1:17-CR-157-CAP, , 2020 WL 1673009, at *3 (N.D. Ga. Apr. 6, 2020) ("As pointed out by the magistrate judge, this court specifically ensured that the movant understood the full significance of the waiver and that the movant knowingly and

voluntarily agreed to the waiver. . . . Therefore, the movant's prosecutorial misconduct claim is barred.") (citations to the record omitted).

## D.   **Movant Has Failed to Demonstrate Ineffective Assistance of Appellate Counsel.**

Finally, Movant argues in Ground Six that he received ineffective assistance of appellate counsel because appellate counsel refused to raise plea counsel's ineffective assistance on appeal.  Appellate counsel, however, could not have been constitutionally ineffective for failing to raise any such claims, because the Eleventh Circuit does not review ineffective assistance claims unless and until they were first raised in the district court.  *See Milligan v. United States*, 213 F. App'x 964, 966 (11th Cir. 2007) ("Milligan's appellate counsel could not be constitutionally ineffective because this Court would not have heard his claim for ineffective assistance of trial counsel on direct appeal.  This Court does not consider claims of ineffective assistance of counsel on direct appeal unless those claims were first raised in the district court[.] . . ."); *United States v. Perez-Tosta*, 36 F.3d 1552, 1563 (11th Cir. 1994) ("It is settled law in this circuit that a claim of ineffective assistance of counsel cannot be considered on direct appeal if the claims were not first raised before the district court[.] . . .").  As a result, Movant has failed to demonstrate that appellate counsel provided constitutionally ineffective assistance, and he is not entitled to relief on Ground Six.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)."  28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability should be denied because jurists would not find "debatable or wrong" my determination that

28

Movant's plea was voluntary, he did not receive ineffective assistance of counsel, and/or his claims are barred by the appellate waiver. *See Slack*, 529 U.S. at 484.

## V.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the motion to vacate [Doc. 105] and a certificate of appealability be **DENIED**.

Movant's motion for discovery and for the Court to order the production of documents [Doc. 118] is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 20th day of September, 2021.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE